UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-82118-CIV-ALTONAGA

**BALTAZAR GABRIEL DELGADO-
ROS**,

            Petitioner,

v.

**FLORIDA DEPARTMENT OF
CORRECTIONS**,

            Respondent.

_____/

## ORDER

**THIS CAUSE** came before the Court on *pro se* Petitioner, Baltazar Gabriel Delgado-Ros's

Petition Under 28 U.S.C. [Section] 2254 for Writ of Habeas Corpus by a Person in State Custody

[ECF No. 1].  Respondent filed a Response [ECF No. 8]; an Index to Appendix[es] [ECF No. 9]

with attached exhibits (*see* Exs. 1–25 [ECF Nos. 9-1–9-3]);[1] and a Notice of Filing Transcripts

[ECF No. 10] with attached transcripts [ECF Nos. 10-1–10-2].  Petitioner filed a Reply [ECF No.

11].  The Court has carefully considered the parties' submissions, the record, and applicable law.

For the following reasons, the Petition is denied.

### I.        BACKGROUND[2]

        Petitioner was convicted of armed sexual battery and burglary with assault in Case 11-CF-

012236 in the Seventeenth Judicial Circuit, in and for Palm Beach County, Florida.  (*See* Pet. 1;

---

[1] Appendix 1 [ECF No. 9-1] contains Exhibits 1 through 12 and a portion of Exhibit 13.  Appendix 2 [ECF No. 9-2] contains a portion of Exhibit 13.  Appendix 3 [ECF No. 9-3] contains a portion of Exhibit 13 and Exhibits 14–25.

[2] In his Reply, "Petitioner stipulates to the accuracy of Respondent's recital of the Statement of the Case and Facts as well as the Procedural History set out with the Answer ("Petition") filed in this cause[.]" (Reply 1–2 (alteration added)).

Resp. 2).  Petitioner was sentenced to life in prison on each count.  (*See* Pet. 1).  He now challenges the constitutionality of those state court convictions.

Petitioner filed a direct appeal of his convictions and sentences.  (*See* Resp. 2).  According to Petitioner, the trial court erred by denying a motion for mistrial he made after the jury was sworn but before opening statements.  (*See id.* 1–3; Pet. 4–5).  Petitioner maintained that during *voir dire*, four prospective jurors stated they had watched the news the night before the trial, and two of them made statements about what they had watched that tainted the remainder of the jury.  (*See* Resp. 3; Pet. 4).  Specifically, two of the prospective jurors said, in response to a question about judging the credibility of an accuser, that they were "more comfortable yesterday, but today not so comfortable."  (Pet. 4 (quotation marks and capitalization omitted)).  The Florida Fourth District Court of Appeal ("DCA") *per curiam* affirmed Petitioner's convictions without a written opinion. *See Delgadoros v. State*, 238 So. 3d 789 (Fla. 4th DCA 2018).

Thereafter, Petitioner filed a Motion for Post-Conviction Relief Pursuant to Florida Rule of Criminal Procedure 3.850.  (*See* App. 1, Ex. 12 [ECF No. 9-1] 204–213 [hereinafter Rule 3.850 Mot.]).  Petitioner brought six claims for relief:

    (1)    Trial counsel was ineffective for failing to argue a violation of Petitioner's right to speedy trial based on the prolonged period it took the State to extradite him.  (*See id.* 205).[3]

    (2)    Trial counsel was ineffective for failing to argue the State presented the wrong DNA evidence at trial.  (*See id.* 206).

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

(3)     Trial counsel was ineffective for failing to subpoena a potential witness.  (*See id.*
        208).

(4)     Trial counsel was ineffective for failing to argue a violation of Petitioner's right to
        speedy trial based on the three years he spent in county jail after his extradition.
        (*See id.* 211).

(5)     Trial counsel was ineffective for failing to file a motion to suppress.  (*See id.* 210–
        11).

(6)     Trial counsel was ineffective for failing to retrieve Petitioner's cell phone records
        to support his defense theory.  (*See id.* 210).[4]

The trial court denied the Rule 3.850 Motion based upon the reasoning the State provided in its

response.  (*See* Resp. 3–4).

Petitioner appealed the order denying his Rule 3.850 Motion to the Fourth DCA.  (*See*

Resp. 4–5).  Petitioner contended the trial court "erred when it summarily denied [his Rule 3.850

Motion] without an evidentiary hearing and when the trial court 'adopted and incorporated' the

State's response without making specific findings or attaching record documents to its order."

(App. 3, Ex. 16, Appellant's Initial Br. [ECF No. 9-3] 183 (alteration added) [hereinafter

Appellant's Post-conviction Br.]).  The Fourth DCA *per curiam* affirmed the trial court's decision

without a written opinion on September 9, 2021.  *See Delgado-Ros v. State*, 325 So. 3d 860 (Fla.

4th DCA 2021).  Petitioner filed a motion for rehearing, which was denied, and a mandate issued

on November 19, 2021.  (*See* Resp. 5).

The Petition challenges Petitioner's state court convictions, recycling versions of the same

arguments raised in post-conviction proceedings in the state trial and appellate courts.  (*See

generally* Pet.).  Respondent opposes relief.  (*See generally* Resp.).

---

[4] Petitioner does not raise the argument pertaining to cell phone records in his Petition.

## II.     STANDARDS

### A.     Deference under Section 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007).  "'The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'"  *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (alteration added; quoting *Greene v. Fisher*, 565 U.S. 34, 43 (2011)).  This standard is "difficult to meet."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citation omitted).

The AEDPA provides that a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law.  *Id.* at 410 (emphasis omitted).

Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas corpus relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (alteration added; quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019) (citing *Harrington*, 562 U.S. at 100).   If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).  "The Supreme Court [has] observed that there are good reasons why state courts do not address every single argument made by a defendant, including 'instances in which a state court may simply regard a claim as too insubstantial to merit discussion.'"  *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1212 (11th Cir. 2013) (alteration added; quoting *Johnson*, 568 U.S. at 299).  "[F]ederal courts have no authority to impose mandatory opinion-writing standards on state courts[,]" and due to the heavy caseload shouldered by many appellate courts, "opinions issued by these courts must be read with that factor in mind."  *Id.* (alterations added; quotation marks omitted; quoting *Johnson*, 568 U.S. at 300).

CASE NO. 21-82118-CIV-ALTONAGA

In any event, a federal district court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts can deny petitions for writs of habeas corpus under section 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, as a habeas petitioner will not be entitled to habeas relief if his claim is rejected on *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767 (11th Cir. 2015) ("[B]ecause we conclude that [the petitioner] would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies." (alterations added; footnote call number omitted)).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (alteration added; quotation marks, citations, and footnote call number omitted); *see also Lee*, 726 F.3d at 1192 (citations omitted). The Eleventh Circuit "has stressed that in applying AEDPA deference[,] federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *Meders*, 911 F.3d at 1350 (alteration added). Thus, deferential review under section 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 186 (alteration adopted; quotation marks and citations omitted).

**B.** **Ineffective Assistance of Trial and Appellate Counsel**[5]

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (alterations added; citation omitted). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) petitioner suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687–88, 691–92.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–

---

[5] Five of Petitioner's six claims allege ineffective assistance of trial counsel. (*See* Pet. 4–12).

91.  The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (alteration added; footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) (citation omitted).

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (alteration added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs.  *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

A section 2254 petitioner must provide factual support for his contentions regarding counsel's performance.  *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

### III.   DISCUSSION

Petitioner raises six claims for relief:

Claim 1:  The trial court erred when it denied Petitioner's motion for mistrial based on statements made by prospective jurors during *voir dire*.  (*See* Pet. 4–5).

Claim 2:  Trial counsel was ineffective for failing to argue a violation of Petitioner's right to speedy trial based on his prolonged extradition.  (*See id.* 7).

Claim 3:  Trial counsel was ineffective for failing to argue the wrong DNA evidence was presented at trial.  (*See id.* 8).

Claim 4:  Trial counsel was ineffective for failing to subpoena a potential witness. (*See id.* 10).

Claim 5:  Trial counsel was ineffective for failing to argue a violation of Petitioner's right to speedy trial based on his prolonged extradition and the three years he spent in county jail.  (*See id.* 11).

Claim 6:  Trial counsel was ineffective for failing to file a motion to suppress.  (*See id.* 12).

The Court examines whether each claim is procedurally barred before turning to the merits.

A.   **Procedural Issues**[6]

Respondent contends each claim is unexhausted.  (*See* Resp. 13–16).  The Court agrees only with respect to Claim 1.  Claims 2 through 6, as raised in the Petition, are exhausted.

1.   ***Claim 1***[7]

Respondent admits Petitioner argued Claim 1 on direct appeal.  (*See* Resp. 13).  Indeed, Petitioner's only claim on direct appeal was that "the trial court erred by denying [his] motion for mistrial made before opening statements[.]"  (App. 1, Ex. 8, Appellant's Initial Br. [ECF No. 9-1]

---

[6] Respondent concedes the Petition is timely.  (*See* Resp. 8).

[7] To the extent Respondent argues Petitioner's motion for mistral was denied on independent adequate state grounds because its direct appeal "brief explained that the issue was waived as untimely under Florida law[,]" the Court is unconvinced.  (Resp. 13 (alteration added)).  The Eleventh Circuit has established a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state ground.  *See Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010) (citation omitted).  The first part requires that "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim."  *Id.* (citation, quotation marks, and footnote call number omitted).  Here, the Fourth DCA *per curiam* affirmed Petitioner's convictions without a written opinion.  *See generally Delgadoros*, 238 So. 3d 789. And the trial judge did not explicitly deny the motion for mistrial as untimely but instead stated she did not think the rest of the jury panel was tainted.  (*See* Trial Tr. [ECF No. 10-2] 458:9–16, 458:21–23).

175 [hereinafter Appellant's Direct Appeal Br.]) (alterations added; capitalization omitted)). But as Respondent notes, "Petitioner never apprised the state court of the federal nature of his claim and therefore it is not exhausted." (Resp. 13).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (alteration added; quotation marks omitted; citing 28 U.S.C. § 2254(b)(1); other citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quotation marks omitted; citations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." (alteration added)).

To fairly present the federal constitutional issue to the state court, a petitioner can "indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32. "It is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made[.]" *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (alteration added; citing *Picard v. Connor*, 404 U.S. 270, 275–276 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

On direct appeal, Petitioner argued that several prospective jurors' "comments and quick

excusals tainted the remaining jurors[,]" and therefore the trial court erred by refusing to grant his motion for mistrial made before opening statements.   (Appellant's Direct Appeal Br. 174 (alteration added)).   Petitioner never presented this argument as a *federal* claim to the state court.

Throughout his Direct Appeal Brief, Petitioner only cited state law.   (*See id.* 167–68). Petitioner relied on section 90.104(2), Florida Statutes, for the proposition that "the trial court ha[d] the duty to conduct proceedings to prevent even the suggestion of improper evidence being placed before the jury[.]"   (Appellant's Direct Appeal Br. 177 (alterations added)).   While Petitioner did state that "[d]efendants have a constitutional right to a trial by an impartial jury[,]" he cited a First DCA case discussing Florida law.   (*Id.* 180 (alterations added; citing *Holt v. State*, 987 So. 2d 237, 239 (Fla. 1st DCA 2008)).   Petitioner did not cite or rely on any federal authority to indicate the federal basis of his claim.   No reader, let alone "the reasonable reader[,]" would understand Petitioner intended to bring a federal claim before the state court.   *Kelley*, 377 F.3d at 1344–45 (alteration added; citing *Picard*, 404 U.S. at 277).

The Eleventh Circuit has affirmed district court orders denying habeas petitions in analogous situations.   In *McNair v. Campbell* — like here — the petitioner filed a petition for certiorari before the Supreme Court of Alabama wherein "he did not cite a single federal case[.]" 416 F.3d 1291, 1303 (11th Cir. 2005) (alteration added).   The "only mention of federal law was a repetition of the concluding paragraph of his argument before the Court of Criminal Appeals."   *Id.* Instead, the petitioner "relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion (which itself did not mention the federal presumption of prejudice) only as part of a string citation[.]"   *Id.* at 1304 (alteration added). Consequently, the Eleventh Circuit found the district court correctly held that the petitioner's claim was procedurally barred.   *See id.*

More recently, in *Ivy v. Florida Department of Corrections*, the petitioner "summarily claimed on direct appeal of his state conviction that the state trial court violated his constitutional right to a full and fair cross-examination of his accuser[.]" 543 F. App'x 923, 927 (11th Cir. 2013) (alteration added).  The petitioner, however, "failed to indicate that this claim was federal in nature." *Id.*  As here, the petitioner never labeled his claim as a federal claim, nor did he "cite the U.S. Constitution, a federal statute, or federal case law.  He only cited state law." *Id.*  The Eleventh Circuit concluded the petitioner failed to properly exhaust his claim.  *See id.*

Like in *McNair* and *Ivy*, Petitioner did not fairly present his federal constitutional claim to the state court for resolution, denying the state court "a meaningful opportunity to consider [the] allegations of legal error[.]"  *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986) (alterations added; citation omitted).

In Florida, claims which could have been raised on direct appeal, but were not, are considered abandoned and procedurally barred from collateral review.  *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310, 1310 nn. 4, 6 (11th Cir. 1983) (citing *Sullivan v. State*, 372 So. 2d 938 (Fla. 1979); other citation omitted).  "[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (alteration added; citation omitted).  "[A]bsent a showing of cause for and actual prejudice from the default[,]" *id.* at 1302 (alteration added; citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 (1977)), a petitioner procedurally barred from bringing a claim in state court is said to have procedurally defaulted the claim.

The basis for Claim 1 was clearly available to Petitioner on direct appeal, as evidenced by the state law version of the claim argued on direct appeal.  Florida law would prohibit Petitioner

from returning to state court to exhaust the same claim clad in federal cloth; therefore, Claim 1 is procedurally defaulted. *See Ivy*, 543 F. App'x at 927–28 ("[The petitioner's] failure to exhaust his claim resulted in a procedural default because 'it is apparent that the Florida courts would now refuse to hear this claim[.]'" (alterations added; quoting *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009)). And Petitioner makes no showing that cause and prejudice exist to excuse such default. (*See* Reply 3–6).

Altogether, Petitioner failed to exhaust and procedurally defaulted on Claim 1. Because "the exhaustion requirement and procedural default principles combine to mandate dismissal[,]" Claim 1 is dismissed. *Bailey*, 172 F.3d at 1303 (alteration added; citations omitted). The Court will not consider its merits.

### 2.     *Claims 2 through 6*

Respondent concedes Claims 2 through 6 "track the grounds raised" in Petitioner's Rule 3.850 Motion. (Resp. 13). In his Rule 3.850 Motion, Petitioner cited *Strickland*, 466 U.S. 668, the Supreme Court's seminal case on the right to effective assistance of counsel stemming from the Sixth Amendment to the U.S. Constitution. (*See* Rule 3.850 Mot. 69, 76). Thus, there is no question whether Petitioner fairly presented his federal ineffective-assistance-of-counsel claims to the trial court.

"In Florida, exhaustion usually requires not only the filing of a Fla. R. Crim. P. 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (alteration adopted; quotation marks and citation omitted). Petitioner appealed the denial of his Rule 3.850 Motion. Nonetheless, Respondent insists Claims 2 through 6 are unexhausted because Petitioner only raised Florida procedural law, and not any federal law, on appeal of his Rule 3.850 Motion. (*See* Resp. 13–15). The Court disagrees.

The facts of *Nieves* are analogous to those presented here and support a finding of non-waiver. *See* 770 F. App'x 520.  In *Nieves*, the petitioner claimed in his Rule 3.850 motion that his trial counsel was ineffective for failing to request a hearing on his stand-your-ground motion.  *See id.* at 522.  On appeal, the petitioner characterized the trial court's denial as "the state court's error in failing to order an evidentiary hearing on his counsel's ineffectiveness[.]"  *Id.* (alteration added).  The petitioner then raised the same ineffective-assistance-of-counsel claim in his section 2254 petition.  *See id.*  The district court dismissed the claim as unexhausted and procedurally defaulted. *See id.*  The Eleventh Circuit vacated and remanded, concluding "the same constitutional claim was fairly presented and exhausted in state court[,]" affording the "state trial and appellate courts . . . a meaningful opportunity to consider [the petitioner's] allegations of error."  *Id.* (alterations added).

Here, following the trial court's denial of the ineffective-assistance-of-counsel claims raised in his Rule 3.850 Motion, Petitioner appealed the decision to the Fourth DCA.  (*See* Resp. 4–5).  Raising the exact same argument as in *Nieves*, Petitioner stated it was error for the trial court to summarily deny each of the claims he raised in his Rule 3.850 Motion without an evidentiary hearing.  (*Compare* Appellant's Post-conviction Br. 183 ("The sole point on appeal in this case is that the lower tribunal erred when it summarily denied the Appellant's [Rule 3.850 Motion] without an evidentiary hearing[.]" (alterations added))), *with Nieves*, 770 F. App'x at 522 ("Nieves characterized this claim on appeal from the state court's denial of his Rule 3.850 post-conviction motion . . . as the state court's error in failing to order an evidentiary hearing on his counsel's ineffectiveness[.]" (alterations added; citation omitted)).  Like in *Nieves*, Petitioner's ineffective-assistance-of-counsel claims were fairly presented and exhausted in state court.  *See* 770 F. App'x at 522.

In his Reply, Petitioner attempts to recast Claims 2 through 6 as "federal due process" and "equal protection" claims.  (Reply 7 (capitalization omitted)).  According to Petitioner, his

> present federal habeas claim[s] in Ground 2, 3, 4, 5 and 6 complain[] that the State trial court's decision not to hold a hearing and rely on the state prosecutor's response without making a specific finding or attaching record documents to its order [denying] Petitioner's [Rule 3.850 Motion] was a denial of federal due process and a denial of the equal protection of the law, which led to a manifest injustice and a[n] unreasonable determination of the facts without conducting a[n] evidentiary hearing.

(*Id.* (alterations added; capitalization omitted)).

Petitioner did not label or argue Claims 2 through 6 as federal due process or equal protection claims in his Petition.  (*See* Pet. 7–12).  Instead, he argued "the trial court's decision to deny post-conviction relief without an evidentiary hearing was based on an unreasonable determination of the facts in light of the evidence o[f] [his] claim of ineffective assistance of trial counsel [and] was contrary to United States Supreme Court precedent." (*Id.* 7–8, 10–12 (alterations added; capitalization omitted)).  In other words, Petitioner simply challenged the state court's rejection of his ineffective-assistance-of-counsel claims.  The Court is "not obligated to consider [the] new argument[s] raised in [Petitioner's] [R]eply."  *Greenwood v. Sec'y, Dep't of Corr.*, 794 F. App'x 831, 835 (11th Cir. 2019) (alterations added; citation and footnote call number omitted).

Moreover, there is no indication in Petitioner's Post-conviction Brief that he was bringing any federal due process or equal protection claim.  (*See generally* Post-conviction Br.).  Petitioner argued that under a Florida Supreme Court case interpreting Florida law, the trial court had to "either state its rationale in its decision or attach those specific parts of the record that refute each claim presented in the motion."  (Post-conviction Br. 183 (quotation marks omitted; quoting *Anderson v. State*, 627 So. 2d 1170, 1171 (Fla. 1993)).  According to Petitioner, the trial court erred by incorporating the State's response brief in its Order Denying Defendant's Motion for

Post-conviction Relief (*see* App. 3, Ex. 14 [ECF No. 9-3] 171).  (Post-conviction Br. 183).

Again, throughout Petitioner's Post-conviction Brief, Petitioner cited only Florida case law and Florida procedural rules — except for one paragraph where he cited *Strickland*, 466 U.S. at 694, to support one of his ineffective-assistance-of-counsel claims.  (*See* Post-conviction Br. 185). At no point did Petitioner even use the words "due process" or "equal protection" in his Brief, let alone the word "federal" in conjunction.  (*See generally id.*).  Clearly, he was not bringing such claims.  These claims thus are unexhausted and procedurally barred, *see Ivy*, 543 F. App'x at 927– 28, "mandat[ing] dismissal."  *Bailey*, 172 F.3d at 1303 (alteration added; citations omitted).

In any event, Petitioner's due process and equal protection claims are meritless.  Petitioner said it himself: "The [Florida] rules of criminal and appellate procedure do not preclude a court from incorporating a response from the State if the State has provided the necessary record documents."  (Post-conviction Brief 186 (alteration added; citing *Langdon v. State*, 947 So. 2d 460, 461 (Fla. 3rd DCA 2006); *Burnett v. State*, 933 So. 2d 1282 (Fla. 2nd DCA 2006))).  And as Petitioner admitted, the State's response was "replete with references to the record."  (*Id*. 187). Petitioner nonetheless argued the trial court erred by "fail[ing] to append any record attachments to its order."  (*Id.* 187 (alteration added)).

The argument in the Reply boils down to this: Petitioner's federal due process and equal protection rights were violated because he had to cross-reference the State's record cites with the record.  (*See id.*).  Put simply, this is not a harm that is redressable under the Fifth or Fourteenth Amendments.  *Cf. United States v. Hinton*, 268 F. Supp. 728, 731 (E.D. La. 1967) ("It must be a rare case indeed, however, in which mere inconvenience to the defendant will prevent a fair and just trial.").  If anything, this is purely a question of state procedural law.  Petitioner fails to persuade otherwise.  (*See* Reply 7–10 (failing to cite any authority supporting federal due process

or equal protection claims)).

To recap, the Court will consider the merits of Claims 2 through 6 in accordance with how they were presented in the state courts and in the Petition: as ineffective-assistance-of-counsel claims. Petitioner's references to due process and equal protection, first raised in his Reply, are rejected as procedurally barred and meritless.

## B.    The Merits

Remaining are the five ineffective-assistance-of-counsel claims. As stated, summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference under the AEDPA. *See Meders*, 911 F.3d at 1351 (citing *Harrington*, 562 U.S. at 100). And the AEDPA permits habeas relief from a state court's merits decision only if the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because the Fourth DCA *per curiam* affirmed the trial court's denial of Claims 2 through 6, *see Delgado-Ros*, 325 So. 3d 860, and there is no indication the court based its decision on procedural grounds, the Court will examine each claim with AEDPA deference.

As an initial matter, it is worth noting Petitioner's conviction rested upon compelling evidence including the victim's testimony, DNA matches, and a confession. (*See* App. 1, Ex. 13, State's Resp. to Def.'s Mot. Post-conviction Relief [ECF No. 9-1] 81–84). As discussed below, Petitioner confessed to taking a taxicab to a friend's house; the friend owed him money; and once there, Petitioner attacked the friend's wife and raped her at knifepoint. (*See* App. 3, Ex. 24, Def.'s Interview [ECF No. 9-3] 239–248). The victim testified that after Petitioner was arrested and his photograph was published on the news, she recognized him as her husband's friend. (*See* Trial Tr.

521:16–522:8).  And the police matched Petitioner's DNA with the foreign DNA found on the victim.  (*See id.* 576:13–18).

Taken together, Petitioner is hard-pressed in arguing he was prejudiced by any of his counsel's supposed missteps; thus, each ineffective-assistance-of-counsel claim could fail on *Strickland's* prejudice prong.  *See Strickland*, 466 U.S. at 691–92.  For this reason alone, the state court's denial of each claim was not unreasonable.  *See id.* at 697; 28 U.S.C. § 2254(d).  Nonetheless, the Court examines each claim individually.

### 1.    Claim 2

Petitioner argues his trial counsel had a duty to move the court to dismiss the charges brought against him based on "speedy trial violations" while he was incarcerated in a Guatemalan jail.  (Pet. 7 (capitalization omitted); *see also id.* 11).  This claim fails because, in Florida, the speedy trial clock does not begin to run until after a defendant is arrested and within the State's jurisdiction.  *See* Fla. R. Crim. P. 3.191(e).

In this regard, Florida Rule of Criminal Procedure 3.191, titled "Speedy Trial[,]" provides:

> A person who is . . . incarcerated in a jail or correctional institution outside the jurisdiction of this state or a subdivision thereof, and who is charged with a crime by indictment or information issued or filed under the laws of this state, is not entitled to the benefit of this rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of the person's return is filed with the court and served on the prosecutor.

*Id.* 3.191(e) (alteration added).

The state court's denial of Claim 2 was not unreasonable because the claim is meritless under the plain language of the Rule.  *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." (alteration added; citation omitted)); 28 U.S.C. § 2254(d).

### 2.      Claim 3

Petitioner contends his trial counsel should have argued the wrong DNA evidence was presented at trial.  (*See* Pet. 8).  A review of the record reveals this argument is meritless.

Detective Lori Gunn extracted Petitioner's DNA at the Palm Beach County Sheriff's office. (*See* Trial Tr. 573:16–20, 577:9–20).  At trial, she testified about the process she engaged in when she extracted Petitioner's DNA.  (*See id.* 577:16–578:17, 582:1–25).  The prosecutor presented Detective Gunn with an envelope containing DNA evidence.  (*See id.* 579:4–10).  Detective Gunn identified this envelope as containing Petitioner's DNA, testifying that she sealed and packaged the envelope, it was her handwriting on the envelope, and the envelope was in the same or similar condition as when she packaged it.  (*See id.* 579:13–580:9).  The prosecutor then moved to admit the envelope into evidence, but defense counsel requested a sidebar.  (*See id.* 580:10–13).

At the side bar, defense counsel informed the court "that there [was] a victim['s] name on the envelope that [did] not match the victim in this case" and the parties "agreed to redact . . . everything including the word victim."  (*Id.* 580:20–23 (alterations added)).  The court then admitted the envelope without any objection.  (*See id.* 581:10–16).

Petitioner's contention that "the wrong DNA" was presented is speculation considering Detective Gunn properly identified the envelope as the one she prepared when she extracted Petitioner's DNA.  (Pet. 8 (capitalization omitted)).  Consequently, the state court's denial of Claim 3 was not unreasonable.  *See* 28 U.S.C. § 2254(d).

### 3.      Claim 4

Petitioner maintains his trial counsel should have subpoenaed a potential witness that Petitioner identified as the taxi driver who drove him to the victim's home.  (*See* Pet. 10).  While this argument is not expanded upon in the Petition, Petitioner did develop this argument in his Rule 3.850 Motion.  He posited that the taxi driver "would have [provided] exculpatory evidence

regarding [Petitioner], his demeanor, his clothing, his destination and why." (Rule 3.850 Mot. 73 (alterations added)). Further, he averred the taxi driver would have testified that Petitioner "proffered his ride was to collect a debt." (*Id.*).

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. Unites States*, 575 F.2d 515, 521 (5th Cir. 1978) (alteration added; citations omitted). Consequently, "[the] prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness[.]" *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (alterations added; citation and footnote call number omitted).

Courts have held that an affidavit or sworn testimony is required to overcome this heavy burden. *See, e.g.*, *Jenkins v. Sec'y, Dep't of Corr.*, No. 8:18-cv-1643, 2021 WL 3550881 (M.D. Fla. Aug. 11, 2021) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit." (alteration added; footnote call number omitted))). No such affidavit or sworn testimony has been presented here to bolster Petitioner's claim.

What's more, Petitioner's speculation actually *undermines* his position, as he states the taxi driver would have corroborated the confession he gave the police. Petitioner confessed he took a taxicab to his friend's house to collect a debt regarding drugs that had been stolen from him, and when he discovered his friend was not home, he raped his friend's wife instead. (*See* Def.'s Interview 239–41). Petitioner insists the taxi driver could have provided exculpatory evidence, including that Petitioner "proffered his ride was to collect a debt." (Rule 3.850 Mot. 73). But — unless the Court is missing something — this testimony would be completely consistent with what

Petitioner told the police.  It is entirely unclear, then, how the taxi driver's testimony would exculpate Petitioner of anything, rather than provide more evidence to the contrary.

Given that Petitioner has failed to provide any indication he was prejudiced by his counsel's failure to subpoena the taxi driver, the state court's denial of Claim 4 was not unreasonable.  *See* 28 U.S.C. § 2254(d).

  **4.**  ***Claim 5***

Petitioner asserts his trial counsel should have asserted his speedy trial rights were violated when he spent 23 months in a Guatemalan jail awaiting extradition and then spent another three years in Florida county jail before his trial commenced.  (*See* Pet. 11).  As stated, under Florida law, Petitioner's speedy trial rights did not begin to run until he was brought within the State's jurisdiction.  *See* Fla. R. Crim. P. 3.191(e).  The period in question then is the three years Petitioner spent in Florida county jail before his trial commenced.

Defense counsel filed a Waiver of Speedy Trial (*see* App. 3, Ex. 22 [ECF No. 9-3] 214), stating:

> While I know and understand that my client has a procedural right to be tried within the time parameters set forth by Rule 3.191 of the Florida Rules of Criminal Procedure, and Rule 6.325 of the Florida Rules of the Florida Rules of Traffic Court[], I have determined after thoughtful and careful deliberation, that it is in my client's best interest to waive those rights and consent to the setting of future court hearings, including trial, beyond the time limitations set forth in the aforementioned Rules of Criminal Procedure and Traffic Court.

(*Id.* (alteration added)).

A criminal defense attorney "may waive speedy trial without consulting the client and even against the client's wishes."  *McKenzie v. State*, 153 So. 3d 867, 875 (Fla. 2014) (citations omitted); *see also New York v. Hill*, 528 U.S. 110, 115 (2000).  "Thus, if the right to speedy trial may be waived without consulting the defendant, counsels' waiver here cannot be considered an error, let alone one that is 'so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment.'" *McKenzie*, 153 So. 3d at 875 (quoting *Strickland*, 466 U.S. at 687); *see also Young v. Sec'y, Dep't of Corr.*, No. 8:14-cv-2544, 2018 WL 1183362, at *3 (M.D. Fla. Mar. 7, 2018) ("The state court correctly determined that Young was bound by his counsel's waiver of speedy trial, a decision that is left to the discretion of trial counsel.").

Because defense counsel had the discretion to waive Petitioner's speedy trial rights, the state court's rejection of Claim 5 was not unreasonable.  *See* 28 U.S.C. § 2254(d).

        5.      *Claim 6*

Petitioner claims his trial counsel should have moved to suppress his confession.  (*See* Pet. 12).  According to Petitioner, he confessed because "under Guatemalan law[,] confessing to a crime whether you [are] guilty or not would most assuredly guarantee the accused consideration in the mitigation of the crime[.]"  (*Id.* 12 (alterations added)).  Petitioner "align[s] this issue with the "Alf[ord] doctrine."[8]  (*Id.* (alterations added)).

Put simply, Petitioner's suppression argument is meritless under the *Miranda* doctrine.[9] The transcript of Petitioner's interview reveals the police advised him of his *Miranda* rights, and he waived them.  (*See* Def.'s Interview 228–29).  Petitioner does not argue otherwise.

To admit a defendant's inculpatory statement at trial, the prosecution must prove by a preponderance of the evidence that the defendant "knowingly and voluntarily waived his *Miranda* rights."  *United States v. Lewis*, No. 11-20745, 2012 WL 6569373, at *3 (S.D. Fla. Dec. 17, 2012) (citing *Lego v. Twomey*, 404 U.S. 477, 89 (1972)).  Petitioner does not maintain he unknowingly

---

[8] "An *Alford* plea is a guilty plea where the defendant maintains a claim of innocence to the underlying criminal conduct charged but admits that sufficient evidence exists to convict him of the offense." *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1273 (11th Cir. 2014) (citing *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970)).

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

or involuntarily waived his *Miranda* rights. (*See* Pet. 12). He instead contends he only confessed because he believed doing so would mitigate his punishment, and this belief came from his personal understanding of his home-country's law. (*See id.*). Petitioner's belief did not stem from police coercion, the underpinning of the *Miranda* doctrine. *See Nash v. Estelle*, 597 F.2d 513, 534 n.9 (5th Cir. 1979) (Godbold, J., concurring) ("The underpinning of *Miranda* is the essentially coercive nature of in-custody interrogation.").[10]

Defense counsel was not ineffective by failing to bring a meritless motion to suppress; therefore, the state court's denial of Claim 6 was not unreasonable. *See Bolender*, 16 F.3d at 1573; 28 U.S.C. § 2254(d).

## C.     Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) (citation omitted). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added). Here, the pertinent facts of the case are fully developed in the record. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

## D.     Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability.

---

[10] It appears Petitioner confessed at least in part because he felt remorseful. For example, he stated: "I don't feel happy about what I've done because basically, I retaliated against the wrong people. I shouldn't — I shouldn't have done it." (Def.'s Interview 248).

CASE NO. 21-82118-CIV-ALTONAGA

*See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1.     The Petition Under 28 U.S.C. [Section] 2254 for a Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is **DENIED**.

2.     A *certificate of appealability* is **DENIED**.

3.     A judgment shall issue by separate order. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 21st day of March, 2022.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record;
        Petitioner, *pro se*

24